UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | No. 3:17-cr-00124 |
| | ) | Chief Judge Crenshaw |
| [1] MARCUS TERMAINE DARDEN | ) | |
| [2] MAURICE DUNCAN BURKS | ) | |
| [5] DERRICK LAMAR KILGORE | ) | |
| [6] ELANCE JUSTIN LUCAS | ) | |
| [7] DECARLOS TITINGTON | ) | |

## MEMORANDUM OPINION AND OMNIBUS ORDER III

In advance of the upcoming pretrial conference, the Court issues the following rulings:

### I. Darden's Motion in Limine No. 2 to Exclude Reference to "United States v. Darden" (Doc. No. 989)

As the lead Defendant in this action, Marcus Darden seeks to preclude the Government from referring to this matter at trial as "United States v. Darden" or the "Darden case" because such a designation could suggest that he is somehow more culpable than the other Defendants. The Government objects because Darden "does not cite a single case of legal authority within the body of his motion," nor has he "attached a memorandum of law as required by Local Rule 7.01(a)(2)." (Doc. No. 1051 at 1). This objection is raised even though "the government is unsure of what circumstances" under which it would refer to the case in those terms, and even though the Government acknowledges that "a prosecutor must observe a high standard of conduct to ensure that the defendant's right to a fair trial is not prejudiced." (Id. at 2). It would have been a lot simpler for the Government to concede this motion but, since it did not, Darden Motion in Limine No. 2 (Doc. No. 989) is **GRANTED**. Referring to the instant matter as "this case" will do.

## II. Burks' and Titington's Motions in Limine to Exclude Prior Convictions
## (Doc. Nos. 1002, 1010)

Maurice Burks pled guilty in the Western District of Kentucky on September 15, 2015 to six counts of cocaine distribution. That plea, and Burks' subsequent conviction, forms the basis for overt acts "x," "y," and "z" of the RICO count in this case. DeCarlos Titington pleaded guilty on March 21, 2016 to aggravated assault and being a felon in possession of a firearm in the Montgomery County Circuit Court, and those convictions serve as the basis for RICO overt act "sss," as well as acts committed "in aid of racketeering" as alleged in Counts 34, 35, 36, 37, 38, and 39 of the Third Superseding Indictment. Both Defendants claim that, during their respective plea colloquies, they were not informed that their convictions could serve as the basis for subsequent criminal charges.[1] Accordingly, each has filed a Motion in Limine (Doc. Nos. 1002 and 1010) seeking to exclude evidence of their prior convictions at trial.

Upon entering a guilty plea, a defendant waives many constitutional rights, including the privilege against self-incrimination, the right to a trial by jury, and the right to confront accusers. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Because of the importance of these rights, a guilty plea must be entered into knowingly and voluntarily, id., and with "sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970).

The "likely consequences" of pleading guilty does not mean all possible consequences. El-Nobani v. United States, 287 F.3d 417, 421 (6th Cir. 2002); King v. Dutton, 17 F.3d 151, 153 (6th Cir. 1994). Rather, a defendant need only be "fully aware of the direct consequences" of such

---

[1] Titington goes so far as to "asssert[] he entered guilty pleas on advice of counsel that he would not be prosecuted federally." (Doc. No. 1010 at 1). There is no evidence in the record to support this unadorned statement, however. In fact, the record contains Titington's plea agreement which indicates that he was knowingly and voluntarily pleading guilty, and that the plea was of his own "free will and choice," "without any threats," and "without any promises." (Doc. No. 999-11 at 3).

2

a plea. Brady, 397 U.S. at 755, not those that are collateral to the conviction, El-Nobani, 287 F.3d at 321. A direct consequence "is definite, immediate, and automatic," King, 17 F.3d at 154, whereas "[a] collateral consequence is one that 'remains beyond the control and responsibility of the . . . court in which that conviction was entered,'" United States v. Rodriguez-Gonzales, 543 F. App'x 532, 533 (6th Cir. 2013).

"Consequences of a guilty plea unrelated to the length and nature of the federal sentence are not direct consequences," and "[n]either is the possibility of future RICO charges a direct consequence of a guilty plea." United States v. Tuakalau, 562 F. App'x 604, 608 (10th Cir. 2014). Indeed, even where a grand jury is in the process of investigating possible RICO violations at the time a defendant enters a plea, the defendant need not be informed that his plea could serve as the basis for those RICO charges. United States v. Persico, 774 F.2d 30, 33 (2d Cir. 1985).

Burks' and Titington's reliance on Lee v. United States, 137 S. Ct. 1958 (2017) and Padilla v. Kentucky, 559 U.S. 356 (2010) for the proposition that they should have been informed about the possibility of additional charges based upon the same facts and circumstance is misplaced. In Padilla, the Supreme Court held that counsel was ineffective within the meaning of Strickland v. Washington, 466 U.S. 668 (1984) when he failed to inform defendant that a conviction for drug distribution subjected defendant to deportation. Lee held that a defendant was prejudiced for purposes of Strickland when he would not have pled guilty but-for counsel's assurances that he would not face deportation as a result of his criminal conviction.

"Apart from the common ground of attorney advice, however, [Burks' and Titington's] case[s] ha[ve] little in common with Padilla's [or Lee's]." Parrino v. United States, 655 F. App'x 399, 403 (6th Cir. 2016). "The holding in Padilla was limited to advice 'concerning the specific risk

3

of deportation' and was based upon a long tradition that placed deportation in 'close connection to the criminal process,' which made deportation 'uniquely difficult to classify as either a direct or a collateral consequence.'" Id. (quoting Padilla, 599 U.S. at 366). Whether deemed "direct" or "collateral," the banishment from the United States was "mandatory," Lee, 1962, or at least "virtually mandatory," Padilla, 599 U.S. at 359. In contrast, being named a defendant in a RICO prosecution, or being charged with RICO predicate acts does not rise to that level of near certainty.[2]

The Motions in Limine to Exclude Evidence of Prior Convictions filed by Burks (Doc. No. 1002) and Titington (Doc. No. 1010) are **DENIED**.

### III. Government's Motion in Limine to Permit the Introduction of Medical Records (Doc. No. 990)

The Government seeks permission to introduce certain medical records relating to alleged victims as self-authenticating documents pursuant to the business records exceptions found in Rules 803(b) and 902(11) of the Federal Rule of Evidence. Only Burks and Titington have filed a response and they "have no objection to the Government's motion." (Doc. No. 1055 at 1). Accordingly, the Government's Motion in Limine to Permit the Introduction of Medical Records (Doc. No. 990) as self-authenticating business record documents is **GRANTED**. This ruling, of course, does not pretermit other challenges to the admissibility of the records.

---

[2] Also misplaced is Burks' and Titington's reliance on United States v. Riley, 72 M.J. 115 (C.A.A.F. 2013) and United States v. Rose, 71 M.J. 138 (C.A.A.F. 2012), both of which were decided by the Court of Appeals for the Armed Forces. In Riley, the court held that counsel had a duty to inform defendant she was obligated to register as a sex offender because she was convicted of a crime listed on the "Department of Defense Listing of Offenses Requiring Sex Offender Processing," while in Rose the court held counsel was ineffective when he told defendant that he would not have to register after pleading guilty to indecent assault. Again, these were *direct* consequences of pleading guilty.

4

### IV. Government's Motion in Limine to Permit the Introduction of Defendants' Prior Convictions and to Preclude Any Jury Nullification Arguments at Trial (Doc. 999)

Much as with the medical records, the Government requests that it be permitted to introduce the Defendants' prior convictions based upon certified copies of criminal judgments. That request is based upon Rules 803(22) and 902(1) of the Federal Rules of Evidence. Again, only Burks and Titington have filed a response. This time, however, they object based on their own Motions in Limine that, as discussed above, are denied. There being no outstanding objections to the Government's request to introduce certain judgment of prior convictions pursuant to Rules 803(22) and 902(1), this portion of the Motion will be granted recognizing, of course, that the Government retains the burden of proving beyond a reasonable doubt that a particular Defendant committed the racketeering act at issue.

The Government also seeks to prohibit any arguments for jury nullification. More specifically, the Government moves in limine to prevent Defendant "from arguing to the jury or encouraging an impermissible inference by the jury that, because they have been convicted and sentenced for similar conduct in another jurisdictions, they should not be held accountable in the instant case." (Doc. No. 999 at 11). This part of the motion will also be granted, although it could just as easily be denied as unnecessary because all counsel in this case are experienced professionals who know that jury nullification arguments are improper. See United States v. Walsh, 654 F. App'x 689, 697 (6th Cir. 2016); United States v. Krzyske, 857 F.2d 1089, 1090 (6th Cir. 1988). Obviously, there can be a fine line between zealous advocacy and improper arguments, but on which side of the line an argument falls can only be determined in context and at trial.

The Government's Motion in Limine to Permit the Introduction of Defendant's Prior

Convictions and to Preclude Any Jury Nullifications Arguments at Trial (Doc. NO. 999) is **GRANTED**.

### V. Burks' Motion to Exclude Tattoo Photographs (Doc. No. 1007)

A considerable amount of ink has been spilled in this case over whether the Government should be allowed to take photographs of Defendants' tattoos. After a hearing, Magistrate Judge Brown entered an Order (Doc. No. 512) granting the Government's "Motion for an Order Requiring the Defendant to Submit to Photographs of Their Tattoo's" (Doc. No. 454). After Xavier Jenkins and Burks objected, that Order was vacated as to them because the Court could find no authority to allow the Government to secure such relief by way of a *motion*. (Doc. No. 911). Thereafter, the Government sought and received from Magistrate Judge Brown a search warrant that permitted photographing Defendants' tattoos. Burks now "moves to suppress those photographs from evidence at his trial" because "the affidavit utilized to obtain the warrant signed by Magistrate Judge Brown was patently insufficient to supply probable cause for the taking of those photographs[.]" (Doc. No. 1007 at 2).[3] The Court disagrees.

The Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." Illinois v. Gates, 462 U.S. 213, 236 (1983). Instead, "[a] magistrate's determination of probable cause is afforded great deference by the reviewing court," and "[c]onsequently a magistrate's decision to grant a search warrant should only be reversed if it was arbitrarily exercised." United States v. Greene, 250 F.3d 471, 478–79 (6th Cir. 2001) (citing United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2001);

---

[3] Interestingly, in seeking reversal of Magistrate Judge Brown's decision, Burks argued that Magistrate Judge Brown erred in proceeding on a motion, rather than requiring the Government to seek a search warrant. (Doc. No. 531 at 13).

United States v. Finch, 998 F.2d 349, 352 (6th Cir.1993)). Given the existence of probable cause, Magistrate Judge Brown's decision to issue the search warrant was not arbitrary.

"Probable cause is defined as 'reasonable grounds for belief, supported by less than *prima facie proof* but more than mere suspicion.'" United States v. King, 227 F.3d 732, 739 (6th Cir. 2000) (quoting United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990)). In determining whether probable case exists, a reviewing court "is limited to the information presented in the four corners of the affidavit." United States v. Coffee, 434 F.3d 887, 892 (6th Cir. 2006) (citation omitted). Furthermore, "courts should review the sufficiency of an affidavit underlying a search warrant in a commonsense, rather than hypertechnical, manner." United States v. Miller, 314 F.3d 265, 269 (6th Cir. 2002).

Based upon the lengthy affidavit submitted by ATF Special Agent Adam Daniels, Magistrate Judge Brown (who has lived with this case since its inception) could easily conclude that a search of Burks' body would reveal Gangster Disciples' tattoos. After Agent Daniels described his professional background, he provided (1) an overview of the Gangster Disciples; (2) its organizational structure (including the Tennessee chapters); (3) its purposes and the means and methods by which it leaders and members were enriched (primarily through a myriad of crimes, including drug trafficking); and (4) the importance, relevance, and meaning of tattoos in the gangster disciples culture, including showing allegiance and deterring rivals. The affidavit also list specific tattoos found on Defendants in this case, many of which were clearly Gangster Disciples-based. Agent Daniels also averred that it is common for Gangster Disciple members to receive additional tattoos while incarcerated. As for Burks, the affidavit indicates that he is known to have the phrase "Gangsta Whatever" tattooed on his chest; an image of an individual holding a gun tattooed on his

7

inner right arm; and the phrase, "Hear No Evil, See No Evil, Speak No Evil" tattooed on his outer right forearm. (Doc. No. 1007-2 at 14).

"Probable cause . . . is not a high bar: It requires only the 'kind of fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" Kaley v. United States, 571 U.S. 320, 338 (2014) (quoting Florida v. Harris, 133 S. Ct. 1050, 1055 (2013)). "Gang-affiliation evidence may be highly probative of an individual's membership in a particular gang," and "gang-tattoo evidence helps to identify an individual as a member." United States v. Rios, 830 F.3d 403, 421 (6th Cir. 2016).[4] It was reasonable and prudent for Magistrate Judge Brown to issue the search warrant based upon Agent Daniel's affidavit because that affidavit established at least a "fair probability" that tattoos evidencing affiliation with the Gangster Disciples would be found on Burks' body. Accordingly, Burks' Motion to Exclude Tattoo Photographs (Doc. No. 1007) is **DENIED.**

### VI. Burks' Motion to Reconsider Motion to Sever Defendants
### (Doc. No. 1005)

In the first Memorandum Opinion and Omnibus Order (Doc. No. 823) issued in this case, the Court considered at length the Motions to Sever filed by Brandon Hardison, James Luke, and Burks. Acknowledging that "[t]he general problems inherent in joint trial identified by Defendants are legitimate," the Court nevertheless found they did "not mandate severance." (Id. at 38). This included Burks's concerns about "the (1) impairment of the right to confront witnesses because some co-defendant may have implicated themselves and others in crimes; (2) the 'unquestionable

---

[4] "It is beyond dispute that the Constitution does not protect Defendant from giving non-testimonial evidence," and "[t]hus, the Fifth Amendment's protection against self-incrimination does not extend to physical characteristics such as giving a blood sample or handwriting exemplar." United States v. Nixon, No. 15-CR-20020, 2015 WL 4430176, at *2 (E.D. Mich. July 20, 2015) (citing Pennsylvania v. Muniz, 496 U.S. 582, 595–98; United States v. Dionisio, 410 U.S. 1, 5–6, (1973)). "Federal courts have therefore held that photographing a defendant's tattoos for display to the jury or requiring a defendant to reveal his tattoos to a jury does not run afoul of the Fifth Amendment." Id. (collecting cases).

difficulty' the jurors will have in remembering which facts apply to which defendant throughout the course of a lengthy trial, particularly because defendants 'are linked not just by the fact that they are charged together, but also shared characteristics, such as race, age, and background'; and (3) the possibility of mutually antagonistic defenses." (Id. at 837) (quoting Doc. No. 266 at 2-4). Nothing Burks raises in his Motion to Reconsider changes this Court's conclusion.

The Federal Rules of Criminal Procedure do not provide for motions to reconsider. Therefore, courts typically adjudicate such motions under the standards applicable to motions to alter or amend judgment pursuant Rule 59(e) of the Federal Rules of Civil Procedure. United States v. Ladeau, No. 3:10-CR-00242-1, 2012 WL 5838125, at *2 (M.D. Tenn. Nov. 15, 2012); United States v. Perfecto, No. 2:06-CR-20387-JDB-2, 2010 WL 11602758, at *1 (W.D. Tenn. Sept. 2, 2010). "A Rule 59(e) motion can be granted only for one of three reasons: (1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice." Muncy v. G.C.R., Inc., 110 F. App'x 552, 557 (6th Cir. 2004) (citing GenCorp, Inc. v. American Intel Underwriters, 178 F.3d 804, 834 (6th Cir.1999)).

Burks does not mention any of these three reasons in his Motion. In his reply brief he argues that the Government's recently submitted Notice of Other Act Evidence (Doc. No. 946) constitutes "newly discovered evidence," and provides that which was lacking in the past – the "substantial, undue, or compelling prejudice" a joint trial would bring. By Burks' calculation, he is mentioned in only 4 of the 69 additional incidents listed in the Notice. As for the others, he notes:

> Twenty four (24) of the alleged "additional overt acts" do not mention any of the charged co-defendants in the instant Indictment. Twenty three (23) of them mention a co-defendant who either has already pleaded guilty or noticed his intention to plead guilty. Five (5) of them mention Lamar Warfield (who has not been arrested). Five (5) of them mention Brandon Hardison (whose case has been severed from the other co-defendants). Of the co-defendants currently going to trial, twenty six (26) of the

9

alleged "additional overt acts" mention Marcus Darden; six (6) of them mention Decarlos Titington; four (4) of them mention Elance Lucas; . . . and two (2) of them mention Derrick Kilgore.

(Doc. No. 1005 at 4-5) (footnotes omitted).[5] Burks also contends that, even before the filing of the Notice, there was a "vast discrepancy in the charges and amount of evidence between Marcus Darden and Maurice Burks," with "[a]n extremely conservative estimate [being] that the Government has produced four (4) times more discovery regarding Mr. Darden than it has Burks." (Id. at 4). Thus, Burks argues, "[i]t is clear that the jury in the instant case will be inundated with evidence regarding Mr. Darden," and this will result in undue prejudice.

If the allegations in the Third Superseding Indictment are true, Burks, himself, is no shrinking violet, and at least one of the remaining co-Defendant could be forgiven for making the same complaint about Burks. As the Court previously noted:

> Burks is . . . alleged to have committed murder, along with drug trafficking crimes. In the RICO count, Burks is identified as a Gangster Disciples member who attended membership meetings, and advanced the goals of the organization by (1) possessing with intent to distribute and distributing cocaine in Hopkinsville, Kentucky on February 4, 2010, February 26, 2010, and December 17, 2010; (2) meeting with other Gangster Disciples in or near Clarksville on or about September 23, 2012 to discuss possible retaliation against members of the Bloods gang for the murder of S.F., a Gangster Disciples' associate; (3) communicating with other Gangster Disciples on or about November 3, 2012, about retaliating against members of the Bloods gang; and (4) shooting and killing M.W. inside C-Ray's, on or about November 3, 2012. He is also charged in Count Two with drug conspiracy, and in Counts Ten, Eleven, Thirteen, and Fourteen, for offenses arising from the murder of M.W., including Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1); Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1); Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to, and Possessing, Brandishing, and Discharging a Firearm in Furtherance of, a Crime of Violence, in violation of 18 U.S.C. § 924(c); and Causing Death through the Use of a Firearm, in violation of 18 U.S.C. § 924(j).

---

[5] To what extent the Government will be allowed to introduce evidence regarding this other act evidence is an open question and the subject of several pending motions in limine that will be addressed at the pretrial conference.

Three others are charged with offenses relating to Burks's murder of M.W. as well. (Doc. No. 823 at 40-41).

Just as before, Burks has "not shown how this case can be cleanly severed, such that potential prejudice can be avoided and efficiency would be served, particularly given the overarching RICO conspiracy alleged in Count One." (Id. at 39). The filing of the Notice of Other Acts hardly changes things because "the crux of a 'conspiracy' is a 'collective criminal agreement—[a] partnership in crime.'" Ocasio v. United States, 136 S. Ct. 1423, 1441 (2016) (quoting Callanan v. United States, 364 U.S. 587, 593 (1961)). Indeed, severance seems even less appropriate now that the number of Defendants has dropped from twelve to five, and those that remain all face not only the RICO conspiracy count, but also the drug conspiracy charge alleged in Count Two. Accordingly, Burks' Motion to Reconsider Motion to Sever (Doc. No. 1005) is **DENIED.**

### VII. Darden's Motion for Leave to Submit Additional Jury Questions (Doc. No. 1076)

Darden seeks leave to submit additional questions for inclusion in the jury questionnaire. He acknowledges that "the deadline to submit such questions has passed," but submits that "the final questionnaire has not been completed and disseminated." (Doc. No. 1076 at 1). Darden is only partly correct. The deadline for filing was January 15, 2019, and, since then, the Court has not only finalized the questionnaire, it has been completed by hundreds of prospective jurors. Accordingly, Darden's Motion for Leave to Submit Additional Jury Questions (Doc. No. 1076) is **DENIED**.

### VIII. Remaining Matters

This Court's review of the record suggests that only a few substantive motions remain for consideration. Those include (1) Motions in Limine to Exclude Additional Overt Act Evidence filed

11

by Darden (Doc. No. 980), Burks (Doc. No. 1009), Lucas (Doc. No. 1011) Kilgore (Doc. No. 1012) and Titington (Doc. No. 1015); and (2) Burks Motion to Limine to Exclude Exhibits (Doc. No. 1001). Those Motion will be addressed at the final pretrial conference that is scheduled to begin on March 11, 2019.

Finally, and as a housekeeping matter, the Clerk shall **TERM AS MOOT:** (1) Burks' Motion to Reconsider Magistrate's Ruling (Doc. No. 515) and Motion to Compel (Doc. No. 1000) which relate to the disclosure and time of materials to be provided by the Government because that issue has been resolved by the Court; (2) Burks' Motion to Supplement Jury Questionnaire (Doc. No. 940) because those questions were considered when the Court finalized the jury questionnaire; (3) the Government's Motion for Clarification (Doc. No. 932) because it was addressed by an Order (Doc. No. 1074); and (4) Burks' Motion for a Brief Extension to File Two Replies (Doc. No. 749) because those replies have long-ago been filed and relate to matters that have already been addressed by the Court.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE