UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:17-cr-00124 |
| | ) | |
| MAURICE BURKS | ) | |

**MEMORANDUM OPINION AND ORDER**

Maurice Burks' "Second Motion for New Trial Based on Newly Discovered Evidence" (Doc. No. 1685) has resulted in 75-pages worth of briefing. Notwithstanding that the Government violated Brady v. Maryland, 373 U.S. 83 (1963) when it failed to timely disclose Reports of Investigation ("ROIs") relating to interviews with "Dangerous" Danyon Dowlen on January 29-31, 2019, the Court finds it unnecessary to address this Motion at length, particularly because the Court has previously issued a 50-page Memorandum Opinion detailing the evidence presented during the six-week trial, and the law surrounding motions for a new trial. (Doc. No. 1460).

Prior to setting forth the reasons why Burks' motion will be denied, the Court addresses its jurisdiction to entertain the motion while the underlying case is on appeal. "It is settled law that filing a notice of appeal with the district court divests the district court of jurisdiction to act in a case, except on remedial matters unrelated to the merits of the appeal." Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Nat. Res., 71 F.3d 1197, 1203 (6th Cir. 1995) (collecting cases). "This, however, is not an inflexible rule," and the Sixth Circuit "has consistently held that a district court retains jurisdiction to proceed with matters that are in aid of the appeal." Cochran v. Birkel, 651 F.2d 1219, 1221 (6th Cir. 1981) (collecting cases).

A ruling on Burks' present motion is remedial because, if well-taken, it would allow the

1

Court to correct its decision denying Burks' prior request for a new trial on Counts One and Two. A decision would also likely aid in the present appeal if for no other reason than it might preclude a remand to consider whether this Court's prior decision would have changed had the Brady violation been known when the first ruling was issued.

Assuming the Court is correct that it has jurisdiction, Burks' present motion will be denied for the following five related reasons. First, the ROIs relating to Dowlen involve the gun Burks allegedly used to kill Malcolm Wright at C-Rays on November 3, 2012, as alleged in Counts Ten, Eleven, Thirteen and Fourteen of the Third Superseding Indictment, and the Court has already granted Burks a new trial on those counts. The Court did so primarily because Dowlen was not credible as it pertained to the allegations surrounding the murder, and the other two snitches the Government relied upon – Dezorick Ford and Ronnie Daniels – were no better. (Doc. No. 1460 at 46-48).

Second, the Court has already denied Burks' motion for a judgment of acquittal and a new trial on Count One alleging a RICO conspiracy, and Count Two alleging a drug conspiracy, and the undisclosed ROIs do not alter that analysis. As for the sufficiency of the evidence on Count One, the Court observed a reasonable jury could find that Burks:

    (1) was a long-time member of the Gangster Disciples;

    (2) served for a period as Regent, Coodinator, and Enforcer;

    (3) attended numerous meetings, paid dues, and was identified on Gangster Disciples meeting and phone lists as Mac Reesy;

    (4) attended a large organizational meeting in 2012 that focused on ways to increase membership in the Clarksville deck;

    (5) was closely affiliated with Darden (the unquestionable ringleader of the 615 Region), and the two were often together and "like brothers," having both come from

Guthrie;

(6) traveled with Darden to Murfreesboro to serve a violation on an errant gang member;

(7) sold 10.886 grams of cocaine on February 4, 2010 and 25.851 grams on February 26, 2010, and sold 11.4 grams of crack cocaine on December 17, 2010, as alleged in the Kentucky indictment;

(8) sold half- to one-ounce quantities of cocaine to Dowlen in 2012 and 2013, and sold cocaine to others at least 10 times during this period; and

(9) shot and killed Wright at C-Rays, a known Bloods' hangout, in retaliation for Hardison being sucker-punched earlier in the evening.

Darden, 2019 WL 3946133, at *13. As for the drug conspiracy alleged in Count Two, the Court concluded that a reasonable jury could find Burks guilty because he, along with Macksey McKnight, were charged with distributing cocaine and cocaine base in the Western District of Kentucky and, as a member of the conspiracy charged in this case, Burks "was responsible for 'the drug quantities for which he is directly involved, and any quantity that is a reasonably foreseeable consequence of the conspiracy.'" Id. at *14 (quoting United States v. Lang, 717 F. App'x 523, 547 (6th Cir. 2017); United States v. Anderson, 333 F. App'x 17, 25 (6th Cir. 2009)).

Third, even though from a sufficiency of the evidence viewpoint a reasonable jury could conclude Burks was responsible for Wright's murder, in considering his motion for a new trial on those counts the Court "had to take on a different role than when reviewing the acquittal motion: [it had] to act as the 'thirteenth juror' to consider the credibility of witnesses and the weight of the evidence' to ensure there had not been a miscarriage of justice." United States v. Paulus, 894 F.3d 267, 278 (6th Cir. 2018) (quoting United States v. Lutz, 154 F.3d 581, 589 (6th Cir. 1998). In that role, the Court found it would be manifestly unjust to allow Burks' convictions to stand on Counts Ten, Eleven, Thirteen and Fourteen primarily because the snitches the Government called on these

3

counts (including Dowlen) were not credible. Nevertheless, the Court allowed the conviction on Count One and Two to stand, notwithstanding Dowlen's lack of credibility. The present motion for a new trial only shores up what the Court has already decided: Burks is entitled to a new trial on the counts relating to the shooting and death of Wright, but not on the RICO or drug conspiracy counts.

Fourth, "[t]he decision of whether to grant a new trial is committed to the 'sound discretion of the trial judge', [and] this discretion should be exercised 'only in extraordinary circumstance[s].'" United States v. Canal Barge Co., 631 F.3d 347, 357 (6th Cir. 2011) (citation omitted). Such extraordinary circumstances existed as to the counts relating to Wright's murder because, not only was the witness's testimony that Burks confessed to them inherently incredible, their testimony did not match other witness's accounts or align with the physical evidence (scant though it was) presented at trial. The new evidence that the gun Burks "maybe used" was a .40 caliber instead of a .45 caliber pistol certainly bolsters this Courts conclusion that Burks' convictions on Counts Ten, Eleven, Thirteen an Fourteen cannot stand. After all, a .45 caliber casing was found at the scene at C-Rays. This was in keeping with the Government's theory that a "twin .45" was used. However, none of this alters the Court's conclusion that it was not "against the manifest weight of the evidence," United States v. Hughes, 505 F.3d 578, 592 (6th Cir. 2007), for the jury to conclude that Burks was a member of the RICO conspiracy as alleged in Count One, and that he was also a member of the drug conspiracy alleged in Count Two.

Fifth, the Court agrees with Burks' citation to United States v. Dodd, 391 930, 935 (8th Cir 2004) for the proposition that a new trial can be warranted when a trial court is "left with a perpetual 'bad taste' in its mouth over the nature, quantity, and character of evidence[.]" But that "bad taste" in this case is limited to the counts involving Dowlen's testimony relating to Wright's murder, and

4

not whether the jury was correct in finding Burks guilty of being a member of a RICO and drug conspiracy.

Accordingly, Burks' "Second Motion for New Trial Based on Newly Discovered Evidence" (Doc. No. 1685) is **DENIED**.

In denying Burks' motion, the Court is in no way condoning the Government's failure to turn over the ROI's. Indeed, the Court is quite dismayed that, rather than beginning with a *mea culpa,* expressing regret, and seeking absolution, the Assistant United States Attorneys who were responsible for the error throw their own paralegal under the bus. More than that, they rely on a cryptic statement during a sidebar conference – to wit, Dowlen would say Burks "had used a .45 caliber or a .40 caliber piston in the homicide" – as supporting their belief that the ROIs had, in fact, been timely provided to Burks. (Doc. No. 1689 at 11). Even assuming all of this is true and not further disambulation, Brady itself admits of no inadvertence exception: "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, *irrespective of the good faith or bad faith of the prosecution*." Brady, 373 U.S. 83, 87 (emphasis added); see also, United States v. Olsen, 704 F.3d 1172, 1182–83 (9th Cir. 2013) ("Brady has no good faith or inadvertence defense."); Wolfe v. Clarke, 691 F.3d 410, 423 (4th Cir. 2012) (stating that "willfulness or inadvertence . . . is inconsequential to [a] Brady analysis"); Rinaldi v. Gillis, 248 F. App'x 371, 382 (3d Cir. 2007) (noting that "inadvertence would not excuse a Brady violation"). A mistake was made and the Government needed to be forthright in owning up to it. Lest we forget that the legal profession demands the highest ethical conduct that in turn requires admitting when a mistake has occurred and accepting responsibility for same. That is what a true professional does and on that pillar his or her

5

reputation sits.

    IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

6

Case 3:17-cr-00124   Document 1703   Filed 05/08/20   Page 6 of 6 PageID #: 22098